## Johannes License

*Roger N. Nanovic,* for appellant.

*Robert H. Jordan,* for Commonwealth.

HEIMBACH, P. J., April 26, 1961.—On October 11, 1960, Josephine Johannes made application to the Pennsylvania Liquor Control Board for the transfer to her place of business in Lower Towamensing Township, Carbon County, of Restaurant Liquor License No. R-19004, issued to Frank M. Mogar and Irene A. Versuk, for premises likewise in Lower Towamensing Township. In 1950, applicant had issued to her and her husband for such place of business a malt beverage license by the Pennsylvania Liquor Control Board, which license remains in full force and effect at the present time.

Following a hearing before an examiner of the Pennsylvania Liquor Control Board held on December 29, 1960, the board, on February 17, 1960, in a writ-

ten opinion, refused the transfer of the license and found the following facts:

1. The applicant will not be the sole bona fide owner of the business proposed to be licensed in her name under this application.

2. A business of the sale of liquid fuels and oils is conducted on the property on which the establishment proposed to be licensed under this application is located.

3. The premises proposed to be licensed are within 300 feet of St. John's Evangelical Lutheran Chapel, and within 200 feet of another establishment licensed for the sale of alcoholic beverages.

4. Statements on behalf of the said church and a statement on behalf of the licensee located within 200 feet of the premises, certifying that both the church and the other licensee have no objections to the granting of a retail liquor license at this location, were introduced in evidence at the hearing.

The board concluded:

"As provided by the Pennsylvania Liquor Code, the Board is given discretion in the matter of an application for transfer of a retail liquor license from one location to another when the premises proposed to be licensed are within 300 feet of a church, school, hospital, charitable institution or public playground, or within 200 feet of any other place licensed for the sale of alcoholic beverages.

"In view of the waiver of objections by the church and the other licensee in the immediate vicinity, the Board would ordinarily be inclined to exercise its discretion in the applicant's favor. However, it must be recognized that in this case, there is the additional factor concerning the business of the sale of liquid fuels and oil on the property on which the establishment is located, and that, as provided by the Pennsyl-

vania Liquor Code, as amended by Act 297, effective January 26, 1958, 'NO LICENSE SHALL BE TRANSFERRED TO ANY PLACE OR PROPERTY UPON WHICH IS LOCATED AS A BUSINESS THE SALE OF LIQUID FUELS AND OIL.'

"In view of this statutory restriction, the Board is of the opinion that it can follow no other course than to refuse this application for transfer of a restaurant Liquor license, notwithstanding the fact that the applicant and her husband now hold a retail dispenser eating place malt beverage license in the same premises, which was granted prior to the enactment of the aforementioned restriction which now prohibits the transfer of any other license to the same location. Therefore, the following order is made:"

And the board made the following

*"Order*

"And now, February 17, 1961, for the above reasons it is ordered and decreed that the transfer of restaurant liquor license applied for by Josephine Johannes for premises located in the Township of Lower Towamensing and County of Carbon be and it is hereby refused."

From this order applicant has appealed to the Court of Common Pleas of Carbon County, and the matter came up for hearing on April 6, 1961.

Pursuant to stipulation of counsel for applicant and counsel for the Liquor Control Board, the record of the testimony taken before the examiner of the Liquor Control Board at its hearing on December 29, 1960, was admitted into the record in the instant matter and is accepted by the court in lieu of any other testimony.

Counsel for applicant renewed his statement made before the examiner that the husband of applicant would join in the application to overcome the objec-

tion of the board as to applicant not being the sole bona fide owner of the business proposed to be licensed.

Counsel for applicant and counsel for the Pennsylvania Liquor Control Board thereupon entered into the following stipulation, viz.:

"Counsel for the applicant and counsel for the Pennsylvania Liquor Control Board stipulate that the sole question to be determined on the appeal is whether Act #297, 47 PS 4-468, as enacted January 26, 1956, applies and creates an absolute prohibition to the transfer of a license to the premises where the sale of liquid fuel oil is conducted, or whether the Act of November 19, 1959, 47 PS section 4-404 is applicable, wherein the board is given discretion to refuse the transfer of a license when the principal business conducted on that premises is the sale of liquid fuels and oils."

A review of the record convinces us that the board's finding of fact no. 2, viz.: "2. A business of the sale of liquid fuels and oils is conducted on the property on which the establishment proposed to be licensed under this application is located" is in error, and we would find otherwise. Mr. Jordan, counsel for the Pennsylvania Liquor Control Board, questioned Mr. Kresge, an enforcement officer of the Liquor Control Board as follows:

"Q. Now, Mr. Kresge, the Board takes an objection that sale of liquid fuels and oil is conducted on the property. Would you say that is the case?

"A. Yes, there is a gas tank in front of the building. I believe it is 18 feet from the establishment.

"Q. Do they sell gas and oil?

"A. Gas and oil are sold on the same property, although there is no physical connection between where the oil is sold and the premises proposed to be licensed.

"Q. In other words, the land itself is owned by the same person?

"A. Yes.

"Q. But there is a physical separation of the part of the land used for fuel oil and gasolene from the premises they desire to use for a licensed premises?

"A. Yes, sir; that is right.

"Q. What is the separation distinction—a physical barrier or what?

"A. The premises for gas and oil is in one portion of the building. The premises proposed to be licensed is in the other portion of the building, but there is no connection. You have to go outside.

"Q. The tank for the fuel is how far from the licensed premises place?

"A. 18 feet.

"Q. How long has this sale of gasolene and fuel oils been going on?

"A. Since the applicant here first purchased the property which was, I believe, in 1957—purchased November 8, 1957.

"Q. Who was the operator of the business?

"A. The operator of the gas business is John Johannes."

On cross-examination the following took place:

"Q. The premises to which this license is proposed to be transferred into is properly and presently licensed by the Pennsylvania Liquor Control Board?

"A. Yes.

"Q. What is the nature of that license?

"A. There is a so-called Eating Place License there: E-3151 and AP-1561.

"Q. John A. Johannes and Josephine Johannes are the licensees in that license?

"A. Yes.

"Q. How long have they held that license?

"A. Since 1950, I believe.

"Q. I believe also, is it correct since 1950 they have operated the filling station?

"A. Yes, that is correct. They purchased the property in 1957, but they have operated since 1950.

"Q. During that time they have operated their licensed establishment and filling station as two separate businesses?

"A. To the best of my knowledge they have."

We find as a fact, from the testimony hereinabove set forth, that the premises for which the transfer of a liquor business is sought is distinct and separate from the premises on which the business of the sale of liquid fuels and oil is conducted. Notwithstanding this finding of fact, which itself would cause us to reverse the board for reasons we will later state, we shall, in accordance with the stipulation of counsel, determine whether, if there were conducted on such premises intended to be licensed sales of liquid fuels and oil, section 468 of the Act of January 26, 1956, P. L. 966, 47 PS §4-468, OR section 404 of the Act of November 19, 1959, P. L. 1550, 47 PS §4-404, applies. Section 468 provides:

"(a) Licenses issued under this article may not be assigned. The board, upon payment of the transfer filing fee and the execution of a new bond, is hereby authorized to transfer any license issued by it under the provisions of this article from one person to another or from one place to another, or both, within the same municipality, as the board may determine: Provided, however, That in the case of distributor and importing distributor licenses, the board may transfer any such license from its place in a municipality to a place in any other municipality within the same county, or from one place to another place within the same municipality, or exchange a distributor license for an importing distributor license or an importing distributor license for a distributor license, if the building for which the license is to be issued has, in

the case of an importing distributor license, an area under one roof of two thousand five hundred square feet and, in the case of a distributor license, an area under one roof of one thousand square feet: And, provided, That, in the case of all transfers of distributor or importing distributor licenses, whether from a place within the same municipality to another place within the same municipality or from a place in a municipality to a place in any other municipality within the same county, and, in the case of an exchange of a distributor license for an importing distributor license or an importing distributor license for a distributor license, the premises to be affected by the transfer or exchange shall contain an office separate and apart from the remainder of the premises to be licensed for the purpose of keeping records, required by the board, adequate toilet facilities for employes of the licensee and an entrance on a public thoroughfare: Provided, however, That in the event that the majority of the voting electors of a municipality, at an election held under the provisions of any law so empowering them to do, shall vote against the issuance of distributor or importing distributor licenses in such municipality, the board is hereby authorized to transfer any such distributor or importing distributor license from its place in such municipality to a place in any other municipality within the same county, upon application prior to the expiration of any such license and upon payment of the transfer filing fee and the execution of a new bond; but no transfer shall be made to a person who would not have been eligible to receive the license originally nor for the transaction of business at a place for which the license could not lawfully have been issued originally, nor, except as herein provided, to a place as to which a license has been revoked. No license shall be transferred to any place or property upon which is located

as a business the sale of liquid fuels and oil. Except in cases of emergency such as death, serious illness, or circumstances beyond the control of the licensee, as the board may determine such circumstances to justify its action, transfers of licenses may be made only at times fixed by the board. In the case of the death of a licensee, the board may transfer the license to the surviving spouse or personal representative or to a person designated by him. From any refusal to grant a transfer or upon the grant of any transfer, the party aggrieved shall have the right of appeal to the proper court and therefrom to the Superior Court, in the manner hereinbefore provided."

Section 404 provides:

"Upon receipt of the application, the proper fees and bond, and upon being satisfied of the truth of the statements in the application that the applicant is the only person in any manner pecuniarily interested in the business so asked to be licensed and that no other person will be in any manner pecuniarily interested therein during the continuance of the license, except as hereinafter permitted, and that the applicant is a person of good repute, that the premises applied for meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a hotel, restaurant or club, as defined in this act, and that the issuance of such license is not prohibited by any of the provisions of this act, the board shall, in the case of a hotel or restaurant, grant and issue to the applicant a liquor license, and in the case of a club may, in its discretion ,issue or refuse a license: Provided, however, That in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground,

or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil: And provided further, That the board shall not issue new licenses in any license district more than twice each license year, effective from specific dates fixed by the board, and new licenses shall not be granted unless the application therefor shall have been filed at least thirty days before the effective date of the license: And provided further, That nothing herein contained shall prohibit the board from issuing a new license for the balance of any unexpired term in any license district to any applicant in such district, who shall have become eligible to hold such license as the result of legislative enactment, when such enactment shall have taken place during the license term of that district for which application is made or within the thirty days immediately preceding such term."

We hold that the prohibition for the transfer of licenses to any place or property upon which is located, as a business, the sale of liquid fuels and oil, as provided in section 468, is limited to distributors' and importing distributors' licenses, while section 404 governs the issuance and transfer of licenses for a hotel, restaurant or club.

Under section 404, the Liquor Control Board in its discretion may refuse to transfer a license to a place where the *principal business* is the sale of liquid fuels and oil.

Assuming that the Liquor Control Board was correct in finding as a fact that a business of the sale of liquid fuels and oil is conducted on the property on which the establishment proposed to be licensed under this application is located, before the Liquor Control Board could refuse transfer of the license for such reason, it first would have to find that selling liquid fuels and oil was the principal business conducted on

such premises. The testimony is that the sale of liquid fuels and oil is not the principal business conducted on the premises. We quote from the record:

"Q. In this filling station do you sell fuel oil and gasoline?

"A. Yes.

"Q. How many gallons did you sell in 1960 up to yesterday?

"A. Until the end of this year I did probably sell about 65,000 gallons.

"Q. That is a little better than 5,000 gallons a month?

"A. Yes.

"Q. What is your gross profit from sale of one gallon of gasoline?

"A. Four cents a gallon.

"Q. What would your total gross profit on 65,000 gallons be?

"A. $2600.

"Q. Is this pretty consistent with sales last year?

"A. I think I am a little lower this year than I was last year.

"Mr. Nanovic offers an affidavit from the Sinclair Oil Company.

"By the examiner:

"Q. The gasoline business would roughly be $2,600?

"Mr. Nanovic: That is not a net profit.

"Q. If this is $2600 can you tell me what that would be net profit?

"A. I would say between one and two cents a gallon.

"Q. In other words, of this $2,600, $1,300 would perhaps be net profit?

"A. Yes.

"Q. Can you give me the same picture for your licensed business?

"A. This year up to two days ago, I would say up in the eating place I think $9,200.

"Q. That would be your gross sales?

"A. Yes.

"Q. Can you give me a net on that?

"A. I would say about $4,000. Four or five thousand dollars, in that neighborhood."

We, therefore, find as a fact that, if we accept the board's finding that the sale of liquid fuels and oil is conducted on the premises, such sales are not the principal business thereon and the Liquor Control Board has no discretionary power to refuse a transfer of the license for that reason.

The testimony is that in 1950 the Liquor Control Board approved the transfer of a malt beverage license to applicant and her husband, for these identical premises. The testimony likewise is that a liquid fuel and oil business was being conducted at that time on the same identical part of the premises. (The statute in force at that time continued the same identical provision relative to the sale of liquid fuels and oil as does section 404, supra.) Likewise, the premises at that time, as it continues to be, is within 300 feet of St. John's Evangelical Lutheran Chapel and within 200 feet of another establishment licensed for the sale of alcoholic beverages. The testimony is that neither applicant nor her husband have ever had any difficulty with the Pennsylvania Liquor Control Board. Statements from the church and the licensee of the establishment within 200 feet of applicant's premises, offering no objection to the transfer, were introduced into the record. In view of this uncontradicted testimony, it would be inconsistent and an abuse of discretion for the board to refuse a transfer of the liquor license as sought, unless there is an absolute prohibition against such transfer.

60

Since the board has refused the transfer of the license for the sole reason that liquid fuels and oil are sold on the premises, concluding for such reason it is without authority to do so, we hold the board to be in error for the reasons hereinbefore stated.

Therefore, we make the following

*Order*

And now, April 26, 1961, the within appeal is sustained, and the Pennsylvania Liquor Control Board is directed to transfer License No. R-19004 from Frank M. Mogar and Irene A. Versuk to Josephine Johannes and her husband, John A. Johannes, t/a J-Bar, Route 1, Palmerton, Pa., upon their paying the proper fees and furnishing the requisite bond, according to law.